JOSEPH J. CARLIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carlin v. Commissioner
Docket No. 15558-79.
United States Tax Court
T.C. Memo 1981-694; 1981 Tax Ct. Memo LEXIS 48; 43 T.C.M. (CCH) 22; T.C.M. (RIA) 81694; December 7, 1981. Joseph J. Carlin, pro se. Louis T. Conti, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a) [1]
1975
$ 8,019.25
$ 2,004.81
1976
1,982.00
$ 98.90
After concessions by petitioner, the issues remaining are: 1) whether petitioner is entitled to business loss deductions in the amounts of $ 25,000 in 1975 and $ 5,000 in 1976 arising out of certain uncollectible legal fees, 2) whether petitioner is entitled to claim an exemption for his spouse in 1975, 3) disallowances of *50 medical expense deductions and increases in petitioner's self-employment taxes for 1975 and 1976, resulting automatically from adjustments of other items on petitioner's return, and 4) whether petitioner is liable for additions to tax under section 6651(a) for the late filing of his 1975 tax return. Some of the facts have been stipulated. The stipulation, together with the exhibits attached, are incorporated herein by reference. Petitioner Joseph J. Carlin resided in Philadelphia, Pennsylvania, at the time he filed the petition in this case. He timely filed an income tax return for the taxable year 1976. Issue 1. Legal Fee Losses
On his 1975 and 1976 returns, petitioner deducted $ 25,000 and $ 5,000, respectively, as "Bad debts arising from sales or services." These amounts, according to petitioner, reflect the value of services he performed in 1975 and 1976 as an attorney representing the Pennsylvania Parent Assistance Authority. Petitioner maintains his books and records on the cash receipts and disbursements method of accounting. At no time did petitioner report any income received from performing these 1975 and 1976 services. Respondent disallowed these *51 bad debt deductions on the ground that petitioner had never taken the services into income and consequently petitioner had no basis in the "debts" within the meaning of section 1.166-1(e), Income Tax Regs. Petitioner now concedes that these deductions were not bad debts within the meaning of section 166. However, petitioner argues that these deductions are allowable under section 165(a) as losses "sustained during the taxable year and not compensated for by insurance or otherwise." Section 165(b) provides: (b) AMOUNT OF DEDUCTION.--For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. Petitioner argues that section 165(b) does not apply in the case of individuals. We find this argument wholly without merit. Section 165(b) contains no language precluding its application to individuals and we infer none. Petitioner has failed to demonstrate any adjusted basis for these losses within the meaning of section 1011. Consequently, petitioner is entitled to no loss deductions under section 165(a) and (b). *52 Issue 2. Exemption for Spouse
Petitioner claimed a $ 750 exemption for his wife on his 1975 tax return, which he filed as "married filing separately." Respondent disallowed this exemption on the ground that the petitioner failed to show that his wife had no gross income of her own in 1975. Section 151(b) allows a taxpayer not filing a joint return to claim an exemption for his spouse only if the spouse "has no gross income and is not the dependent of another taxpayer." Petitioner failed to introduce any evidence showing that his wife did not have gross income in 1975. Petitioner bore the burden of proof on this issue. Rule 142(a). Consequently, we hold petitioner was not entitled to claim an exemption for his wife in 1975. Issue 3. Medical Deductions and Self-Employment Taxes
Respondent disallowed $ 953.58 and $ 200 of medical expense deductions claimed by petitioner in 1975 and 1976, respectively. These disallowance were attributable to adjustments made by respondent with respect to issues 1 and 2 above (in addition to an adjustment of $ 900 in 1975 for disallowed "referral fees," which adjustment petitioner does not now dispute). As we have found for respondent *53 on the above two issues, we find respondent properly disallowed these medical expense deductions. Respondent further increased petitioner's self-employment taxes to $ 1,113.90 and $ 1,208.70 for 1975 and 1976, respectively, as a result of the abovementioned and other prior-agreed adjustments to income. For the same reason stated in the preceding paragraph, we hold that these increases in petitioner's self-employment taxes were also proper. Issue 4: Late Filing of 1975 Return
Respondent asserts that petitioner first filed his 1975 tax return on December 13, 1977. Respondent seeks to impose a late filing a addition to tax against petitioner for the 1975 taxable year under section 6651(a). Respondent's witnesses testified that in the course of auditing petitioner's 1976 tax returns in 1977, the examining agent discovered that petitioner had not filed a 1975 tax return. A copy of petitioner's 1975 return was then requested and was filed by petitioner on December 13, 1977. To the contrary, petitioner testified that he timely filed his 1975 tax return, but the Internal Revenue Service somehow lost his return. Petitioner claims that the first he heard about there being *54 some problem with his 1975 return was in the summer of 1977 when the Internal Revenue Service requested a copy of the front page of his 1975 return. The petitioner sent a copy of this front page to respondent, but then received notification later in the year that a copy of the whole 1975 return was needed by respondent. Petitioner then resubmitted a copy of his 1975 tax return to respondent on December 1, 1977, signing the return with the word "Refiled" appearing prominently below his name. This return was subsequently stamped "Received, Dec. 13, 1977" and the words "Delinquent Return Secured By Audit" were written across the top by respondent's agents. We are inclined to believe petitioner's story for two reasons: First, petitioner's demeanor and apparent candor at trial. Second, and more importantly, the fact that on petitioner's 1976 tax return (whose timely filing on April 15, 1977, respondent does not challenge), a credit of $ 2.28 was claimed as an "Over Payment From 75." The 1975 tax return filed by petitioner on December 13, 1977, indicates that $ 2.28 was overpaid by petitioner in that year. This figure on the return filed December 13, 1977, was arrived at only *55 after calculating numerous itemized medical, taxes, interest expense and charitable contribution deductions used to offset over $ 45,000 of gross business receipts. We think it unlikely that on April 15, 1977, the petitioner would have been able to claim this exact credit of $ 2.28 from his 1975 taxes had he not prior to that date completely filled out a 1975 tax return in all respects identical to the return he filed in December of 1977. We also think it unlikely that petitioner, having completed a 1975 tax return prior to April 15, 1977, would have merely held on to it (i.e., not filed it with the Internal Revenue Service) and then only in December of 1977 acquired another set of blank 1975 forms, filled them out based on the retained return, and filed the copy return with the respondent instead of the original. A much simpler and more plausible explanation is that petitioner timely filed his 1975 returns and respondent simply misplaced them. Accordingly, we hold that petitioner has carried his burden of proof on the latefiling issue. No addition to tax under section 6651(a) is due. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended. All references to "Rules" are to the Tax Court Rules of Practice and Procedure.↩